# 2006 DTA 127

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE PONCE
PANEL IX**

LUZ VIOLETA LUBERZA SANTIAGO, *ET ALS.*
Recurridos

v.

MANUEL MORALES
Recurrido

Núm. KLCE-06-01242

San Juan, Puerto Rico, a 23 de octubre de 2006

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Salas Soler y la Juez Pabón Charneco

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

El presente recurso es secuela de la sentencia emitida por este Tribunal el 8 octubre de 2001 en el recurso KLCE-2001-00781. ■

La controversia está relacionada a la herencia de Isabel Luberza Oppenheimer, (popularmente conocida como *"Isabel La Negra"*), quien fue asesinada en Ponce, Puerto Rico el 3 de enero de 1974. La causante no dejó descendientes, hermanos o ascendientes. Previo a su fallecimiento, otorgó un testamento en el que designó como su heredero al demandado Manuel Morales.

Los recurridos en el caso, Luz, Elba, Catalina, Radamés y Rubén Luberza Santiago y Augusta Luberza Feliciano son primos hermanos de la causante. El 23 de junio de 1975, los recurridos instaron la presente demanda contra el Sr. Morales ante el Tribunal de Primera Instancia y cuestionaron su designación como heredero, alegando razones para declararlo indigno (específicamente, porque el demandado conocía quiénes eran los asesinos de la causante y no los denunció ante las autoridades).

Los recurridos solicitaron que se procediera a la apertura de la sucesión intestada de la causante y a la designación de un administrador judicial para la liquidación de la herencia.

El demandado contestó la demanda y negó las alegaciones. Se comenzó la liquidación del caudal relicto y, oportunamente, se designó como Administrador Judicial del mismo al Lcdo. José Ángel Cangiano.

Para la fecha de la muerte de la causante, existía controversia sobre las contribuciones sobre ingresos adeudadas por ésta al Departamento de Hacienda para el año 1973. El Administrador Judicial se encargó de representar al caudal en torno a esta controversia.

El Lcdo. Cangiano también se hizo cargo de presentar la planilla del caudal relicto ante el Departamento de Hacienda y de gestionar que se expidiera el relevo correspondiente. La planilla fue presentada el 30 de enero de 1975. Poco después, el Administrador Judicial pagó $68,876.05 al Departamento de Hacienda por concepto de contribución autoimpuesta por concepto de contribución sobre el caudal relicto. El pago se recibió el 5 de febrero de 1975.

Al revisar la planilla, los funcionarios del Departamento de Hacienda concluyeron que la contribución autoimpuesta había sido subestimada. El caso fue asignado a la División de Investigación del Departamento de Hacienda.

Para 1978, el Secretario de Hacienda, por conducto de los funcionarios del Negociado de Contribución Sobre Ingresos del Distrito de Ponce, tasó la contribución sobre ingresos adeudada por la causante para el año contributivo 1973 en $278,057.00. Al recibir la notificación de la deuda, el Administrador Judicial comenzó gestiones para llegar a un acuerdo transaccional sobre dicha obligación.

Para esta época, el 29 de diciembre de 1978, la División de Investigación del Departamento de Hacienda también determinó que los recurridos adeudaban $65,080.60 por concepto de contribución sobre el caudal relicto. El 12 de enero de 1979, el Departamento de Hacienda cursó al Administrador Judicial una notificación final de deficiencia y requerimiento de pago.

Los recurridos solicitaron la revisión administrativa de dicha determinación. La vista correspondiente se celebró el 3 de diciembre de 1980. Los recurridos no presentaron suficiente evidencia para persuadir al Departamento a modificar su determinación inicial.

El 11 de agosto de 1981, el funcionario a cargo de la vista administrativa ordenó que se notificara a los recurridos la deficiencia en forma final. Para esta época, la deuda por concepto de contribución sobre el caudal relicto ascendía a $75,325.76. Los recurridos no cuestionaron dicha determinación ante los tribunales, por lo que ésta advino final y firme.

En el período subsiguiente, el Administrador Judicial realizó gestiones para llegar a un acuerdo de transacción con los funcionarios del Departamento de Hacienda.

Luego de muchos años, el 30 de enero de 1996, la sucesión y el Secretario de Hacienda llegaron a un acuerdo para la liquidación de la deuda de contribución sobre ingresos, mediante el pago de $50,000.00. El pago correspondiente fue realizado el 1 de febrero de 1996.

No surge de los documentos presentados ante este foro que el acuerdo final otorgado entre las partes hubiera incluido la deuda por concepto de contribuciones sobre el caudal relicto. El Administrador Judicial, sin embargo, así lo entendió y le comunicó al Tribunal de Primera Instancia que la sucesión había satisfecho todas las deudas del caudal por concepto de contribuciones sobre la propiedad y sobre ingresos.

El 23 de marzo de 1999, el Tribunal de Primera Instancia emitió una sentencia parcial en la que ordenó la venta de una propiedad inmueble perteneciente al caudal. Se autorizó al Administrador Judicial a realizar los trámites correspondientes para la venta.

El Administrador Judicial le solicitó al Secretario de Hacienda que emitiera el correspondiente certificado de cancelación del gravamen por concepto de contribución sobre el caudal relicto. El Secretario de Hacienda se negó y señaló que la sucesión no había pagado la contribución sobre el caudal relicto fijada el 24 de agosto de 1981. El Administrador Judicial alegó que dicha deuda había quedado satisfecha mediante el pago de los $50,000 realizado por la sucesión el 1 de febrero de 1996.

Ante el *impasse*, el 27 de septiembre de 2000, el Administrador Judicial solicitó al Tribunal de Primera Instancia que determinara que la sucesión había pagado todas sus deudas contributivas y le ordenara al Secretario de Hacienda emitir el certificado de cancelación del gravamen sobre el caudal relicto. El Administrador Judicial alegó que la deuda por este concepto también había sido transigida en febrero de 1996.

El 1 de octubre de 2000, el Tribunal de Primera Instancia declaró con lugar la solicitud del Administrador Judicial.

El 3 de noviembre de 2000, el Secretario de Hacienda compareció al procedimiento en oposición a la orden emitida por el tribunal y solicitó que se le relevara de cumplirla. El Secretario negó que el pago realizado por la sucesión en febrero de 1996 hubiese incluido la deuda por concepto de contribución sobre el caudal relicto y alegó que los recurridos tampoco podían atacar colateralmente la determinación final de deficiencia emitida por el Secretario.

Luego de otros trámites, incluyendo la celebración de una vista, el 12 de marzo de 2001, el Tribunal de Primera Instancia se reafirmó en su orden. El Secretario de Hacienda acudió entonces ante este Tribunal mediante el mencionado recurso KLCE-2001-00781.

El Administrador Judicial compareció ante este Tribunal en defensa de la orden emitida por el Tribunal de Primera Instancia. El Administrador Judicial alegó que las conversaciones entre las partes habían incluido la deuda por concepto de contribución sobre el caudal relicto. No planteó que la deuda contributiva estuviese prescrita.

Luego de otros trámites, el 8 de octubre de 2001, este foro emitió una sentencia en la que revocó la orden emitida por el Tribunal de Primera Instancia.

En aquella ocasión concluimos que los documentos presentados por el Administrador Judicial no reflejaban que el acuerdo entre las partes hubiese incluido la deuda por concepto de contribución sobre el caudal relicto. Expresamos que dicho acuerdo transaccional debía ser interpretado de manera restrictiva, en contra de la renuncia de la reclamación por parte del Secretario de Hacienda. También observamos que el Tribunal de Primera Instancia carecía de facultad para revisar colateralmente la determinación final de deficiencia emitida por el Secretario Hacienda o para ordenarle a dicho funcionario emitir un certificado de cancelación del gravamen por concepto de contribución sobre el caudal relicto.

La sentencia emitida por este Tribunal advino final y firme, lo que tuvo el efecto de terminar los procedimientos contra el Secretario de Hacienda. La sucesión, sin embargo, se rehusó a pagar la contribución adeudada sobre el caudal relicto.

En su lugar, devuelto el caso al Tribunal de Primera Instancia, el Administrador Judicial solicitó nuevamente al foro recurrido que le ordenara al Secretario de Hacienda emitir un certificado de cancelación del gravamen por concepto de contribución sobre el caudal relicto. En esta ocasión, el Administrador alegó que el Secretario de Hacienda había actuado tardíamente al intentar cobrar la deuda.

El Secretario de Hacienda compareció al foro de Primera Instancia y se opuso a que el Tribunal emitiera una segunda orden en su contra. Señaló que el asunto había quedado adjudicado a su favor mediante la sentencia emitida por este Tribunal el 8 de octubre de 2001. El Secretario de Hacienda alegó, además, que el término prescriptivo para el cobro de la deuda había quedado interrumpido por virtud de las conversaciones celebradas por las partes relacionadas al pago de la deuda contributiva de la sucesión.

Luego de otros trámites, el 9 de junio de 2006, mediante la resolución recurrida, el Tribunal de Primera Instancia le ordenó nuevamente al Secretario de Hacienda que procediera a emitir el certificado de cancelación de gravamen.

En su resolución, el Tribunal de Primera Instancia concluyó que la deuda contributiva se hallaba prescrita, debido a que el Secretario de Hacienda no había realizado gestiones para su cobro desde 1981. El Tribunal entendió que su dictamen no resultaba inconsistente con la sentencia previa emitida por este Tribunal.

El Tribunal de Primera Instancia explicó:

*"Es evidente que la premisa central que sostiene la sentencia del [Tribunal de Apelaciones] es la existencia de una deuda contributiva de la Sucesión, cuya tasación final se efectuó el 24 de agosto de 1981, hace poco menos de 25 años. Al encomendarse a este Tribunal, por ambas partes, una adjudicación sobre la prescripción de la llamada deuda y al este Tribunal concluir que en efecto la deuda se encuentra prescrita, pierde existencia la referida deuda. Una orden de este Tribunal al Departamento de Hacienda para que expida el correspondiente relevo de gravamen de caudal relicto no puede verse como una actuación "dirigida a impedirle [al Secretario de Hacienda] llevar a cabo cobrar la deuda determinada por él." Con la prescripción de la deuda, su extinción."*

Al estar impedido el Secretario de Hacienda de cobrar la deuda determinada, concluimos, bajo los mismos principios invocados por el [Tribunal de Apelaciones] en su sentencia, que el Secretario ahora sí tiene el deber ministerial de expedir el relevo en cuestión. Una orden al efecto no puede interpretarse ya como una acción para impedir el cobro de una deuda que ya no existe.

El Tribunal emitió su dictamen sin haber celebrado una vista evidenciaria.

La resolución del Tribunal de Primera Instancia fue archivada en autos y notificada a las partes el 13 de junio de 2006. Dicha resolución no fue recibida por el demandado Manuel Morales, cuyo abogado anterior solicitó ser relevado de su representación por haber sido electo a un cargo electivo. Dicha parte compareció representada por el Lcdo. Luis Guillermo León Rodríguez, quien solicitó que se le cursara notificación de la decisión del Tribunal. El 20 de julio de 2006, el Tribunal de Primera Instancia ordenó que su resolución fuese notificada a dicha parte.

Insatisfecho con la determinación del Tribunal de Primera Instancia, el Secretario de Hacienda solicitó reconsideración del dictamen emitido. Mediante resolución emitida el 22 de agosto de 2006, el Tribunal se negó a reconsiderar.

El 13 de septiembre de 2006, el Secretario de Hacienda acudió ante este Tribunal mediante el presente recurso.

El 29 de septiembre de 2006, acogimos el recurso y concedimos término a la parte recurrida para comparecer. El Administrador Judicial ha comparecido por escrito y nos solicita la desestimación del recurso.

Revocamos.

## II

En su recurso, el Secretario de Hacienda plantea que el Tribunal de Primera Instancia erró al determinar que la deuda contributiva estaba prescrita y al emitir una segunda orden en su contra.

La sección 3431(a) del Código de Rentas Internas de 1994 dispone, en lo pertinente, que todas las contribuciones impuestas al caudal relicto de una sucesión constituirán un *"gravamen preferente a favor del Estado Libre Asociado sobre todos y cada uno de los bienes del caudal relicto bruto"* que hubiesen sido transferidos. 13 L.P.R.A. sec. 9331(a). El inciso (b) de dicho precepto también dispone:

*"Si cualquier persona obligada a pagar cualquier contribución impuesta por esta parte olvidare o rehusare pagar la misma después de la notificación y requerimiento del Secretario, su importe (incluyendo cualesquiera intereses, penalidades, cantidades adicionales o adiciones a dicha contribución) constituirá un gravamen a favor del Estado Libre Asociado de Puerto Rico sobre toda propiedad y derechos de propiedad, mueble o inmueble, pertenecientes a dicha persona. El gravamen provisto por este inciso se originará tan pronto como se haya impuesto la contribución y el Secretario haya exigido su pago mediante notificación y requerimiento de acuerdo con la ley. Dicho gravamen continuará vigente hasta que sea cancelado...".*

13 L.P.R.A. sec. 9331(b).

La sección 3434 del Código de Rentas Internas por su parte, también establece, en lo pertinente, que:

*"[N]ingún tribunal aprobará la división o distribución, venta, entrega, cesión o ejecución de hipoteca sin que se deduzca y se deje depositado en corte, del producto de la subasta, a nombre del Secretario [de Hacienda], el monto de la contribución que éste haya determinado o determine es atribuible a dicha propiedad; y ningún notario autorizará, expedirá o certificará documento alguno de división o distribución, venta, entrega, cesión o hipoteca de tal propiedad ... y ningún registrador de la propiedad inscribirá en registro alguno a su cargo, ningún documento notarial, sentencia o acto judicial, otorgado, dictado o emitido, en relación con cualquier división o distribución, venta, entrega o hipoteca de la mencionada propiedad."*

13 L.P.R.A. sec. 9334(a)(1) (Supl. 2005).

La sección 3432(a) del Código dispone que el Secretario de Hacienda viene obligado a expedir un certificado de cancelación del gravamen si encuentra que la obligación garantizada por el mismo ha sido totalmente satisfecha o que se ha provisto adecuadamente para su cumplimiento. 13 L.P.R.A. sec. 9332(a). Dicho precepto añade, sin embargo, que *"el Secretario podrá negarse a expedir el certificado de cancelación total del gravamen sobre la propiedad que se pretende liberar, si encontrase que la contribución autoimpuesta de acuerdo con esta parte no fue razonablemente determinada." Id.*

En el presente caso, según hemos visto, el Secretario de Hacienda se ha rehusado a emitir el certificado de cancelación de gravamen sobre el caudal de los recurridos, debido a que éstos no han pagado la deficiencia determinada por dicho funcionario.

El Tribunal de Primera Instancia determinó que la deuda contributiva en cuestión se hallaba prescrita, por haber transcurrido el término establecido por la sección 6006(d)(2) del Código de Rentas Internas. Dicho precepto dispone:

*"No obstante lo dispuesto en la ... Ley de Contabilidad del Gobierno de Puerto Rico, el Secretario [de Hacienda] procederá a eliminar de los récords de los contribuyentes, incluyendo a los empleados públicos, y quedará impedido de cobrar aquellas deudas impuestas por este Código o leyes anteriores de las cuales ya han transcurrido diez (10) años desde que fueron tasadas."*

13 L.P.R.A. sec. 8026(d)(2).

El precepto añade que *"a los fines de determinar el período de prescripción, se tomará en cuenta cualquier interrupción en dicho período."* 13 L.P.R.A. sec. 8026(d)(2).

En la situación de autos, el Tribunal de Primera Instancia entendió que el Departamento de Hacienda no había realizado gestiones de cobro de la deuda contributiva sobre el caudal relicto, por lo que dicha deuda había prescrito y había quedado extinguida.

Lo cierto es, sin embargo, que con posterioridad a la determinación de la deuda, las partes sostuvieron negociaciones por muchos años sobre el pago de la obligación. En su comparecencia en el caso KLCE-2001-00781, el Administrador Judicial planteó expresamente, en este sentido, que dichas conversaciones habían incluido la deuda por concepto de contribución sobre el caudal relicto.

Aunque en esa ocasión, este Tribunal rechazó la contención del Administrador de que el acuerdo de transacción arribado entre las partes el 30 de enero de 1996 había incluido la deuda contributiva por concepto de caudal relicto, ya que dicha obligación no aparecía expresamente mencionada en la documentación del acuerdo, ██ somos de la opinión de que el Administrador está impedido de asumir una posición procesal inconsistente con lo entonces aseverado por él. *Pardo v. Sucn. Stella,* 145 D.P.R. 816, 829 (1998); *Meléndez Piñero v. Levitt & Sons of P.R.,* 129 D.P.R. 521, 555 (1991), *Int. General Electric v. Concrete Builders,* 104 D. P.R. 871, 878 (1976); *Lausell Marxuach v. Díaz de Yáñez,* 103 D.P.R. 533, 537-538 (1975); véase, además, *Corraliza v. Bco. Des. Eco.,* 153 D.P.R. 161 (2001).

Nuestro ordenamiento establece que un término prescriptivo puede quedar interrumpido, entre otras circunstancias, por la existencia de una reclamación extrajudicial efectuada por el acreedor o por cualquier acto de reconocimiento de la deuda por el deudor. 31 L.P.R.A. sec. 5303.

En otro contexto, el Tribunal Supremo de Puerto Rico ha resuelto que la existencia de un curso de

negociaciones entre las partes posterior a un acto inicial de reclamación o de reconocimiento de deuda puede interrumpir un término prescriptivo siempre que de las comunicaciones se desprenda que el acreedor ha manifestado su intención de no perder su derecho. *De León v. Caparra Center*, 147 D.P.R. 797, 809 (1999); *Acosta Quiñones v. Matos Rodríguez*, 135 D.P.R. 668, 673 (1994); *Díaz de Diana v. A.J.A.S. Ins. Co.*, 110 D.P.R. 471, 480 (1980); véase, además, *González v. Wal-Mart, Inc.*, 147 D.P.R. 215 (1998). ■ Estos principios son aplicables a deudas de naturaleza contributiva. Véase, Genovevo Meléndez Carrucini, *Procedimiento Contributivo de Puerto Rico*, San Juan, Instituto de Contribuciones de Puerto Rico, Inc., 1981, a las págs. 599-601; véase, además, *Cía. Azucarera v. Tribl. Contribuciones y Tes.*, 72 D.P.R. 909, 916 (1951) (*"el término prescriptivo puede entenderse prorrogado si la conducta del contribuyente solicitando prórrogas y haciendo promesas de pago que no cumplió, da lugar a que el Tesorero, confiando en tales promesas, deja expirar el término fijado por ley"*); *Sucrs. de J. González & Co. v. Buscaglia, Tes.*, 63 D.P.R. 253, 258-259 (1944).

En la situación de autos, existía controversia sobre el curso de negociaciones posterior a la fijación de la deficiencia por parte del Secretario de Hacienda. En estas circunstancias, el Tribunal de Primera Instancia no podía adjudicar el asunto sumariamente, según lo hizo. *S.L.G. v. S.L.G.*, 150 D.P.R. 171, 193 (2000); *J.A.D.M. v. Centro Com. Plaza Carolina*, 132 D.P.R. 785, 802 (1993); *Tello, Rivera v. Eastern Airlines*, 119 D.P.R. 83, 86 (1987).

La sentencia emitida por el Tribunal de Primera Instancia también resulta errada por una razón más fundamental. El Administrador Judicial no podía fraccionar sus planteamientos en contra del Secretario.

En efecto, la sentencia emitida por este Tribunal el 8 de octubre de 2001 en el recurso KLCE-2001-00781 tuvo el efecto de desestimar el remedio solicitado por los recurridos contra el Secretario de Hacienda. Dicho dictamen advino final y firme.

Los recurridos están impedidos en esta etapa, de solicitar el mismo remedio que entonces pretendían contra el Secretario de Hacienda, a base de nuevos argumentos que pudieron y debieron levantar en el primer recurso. Véase, *Díaz Maldonado v. Lacot*, 123 D.P.R. 261, 274 (1989); *Díaz v. Navieras de P.R.*, 118 D.P.R. 297, 305 (1987); *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720, 732-733 (1978); *Mercado Riera v. Mercado Riera*, 100 D.P.R. 940, 952-953 (1972); *Zambrana v. Tribunal Superior*, 100 D.P.R. 179, 181 (1971); *Isaac Sánchez v. Universal C.I.T. Credit*, 95 D.P.R. 372, 382 (1967); *Capó Sánchez v. Srio. de Hacienda*, 92 D.P.R. 837, 839 (1965); *Cruz v. Ortiz*, 82 D.P.R. 834, 839 (1961).

En el presente caso, el Tribunal de Primera Instancia se dejó persuadir por las partes al determinar que tenía facultad para conceder nuevamente el remedio que había solicitado el Administrador Judicial, cuando dicho remedio había sido considerado y revocado por este Tribunal. El dictamen del Tribunal refleja poca consideración ante lo resuelto por este foro.

Nuestro ordenamiento no favorece el ataque colateral contra determinaciones contributivas. 13 L.P.R.A. sec. 8185; 3 L.P.R.A. sec. 2171; 32 L.P.R.A. sec. 3524, inciso (7); véase, además, *Robert Vizcarrondo v. Srio. de Hacienda*, 114 D.P.R. 566, 574 (1983); *Larroca v. Aboy*, 82 D.P.R. 492, 498-499 (1961).

Lo procedente en el presente caso es que el Tribunal de Primera Instancia ordene el pago de la deuda contributiva existente, junto con sus intereses y recargos, de los bienes que se encuentran bajo la jurisdicción del Tribunal en el proceso de liquidación de herencia.

En su comparecencia, el Administrador Judicial se limita a solicitar la desestimación del recurso alegando que este Tribunal carece de jurisdicción para revisar la determinación recurrida porque el recurso fue instado fuera de término.

Lo cierto es que, según hemos observado, el 20 de julio de 2006, el Tribunal de Primera Instancia ordenó que se notificara nuevamente la resolución emitida por dicho foro al demandado Manuel Morales, cuyo abogado original había descontinuado su representación en el caso y había sido sustituido por un nuevo letrado. Dicha notificación, a nuestro juicio, tuvo el efecto de prorrogar el término para que el Secretario de Hacienda presentara su recurso. Como ha aclarado el Tribunal Supremo de Puerto Rico, sobre una misma sentencia no puede haber válidamente dos fechas distintas de archivo en autos. *Rodríguez Mora v. García Lloréns,* 147 D.P.R. 305, 310 (1998).

No entendemos que el recurso presentado por el Secretario de Hacienda sea tardío.

Por los fundamentos expresados, se revoca la resolución recurrida. Se devolverá el caso al Tribunal de Primera Instancia para procedimientos consistentes con este dictamen.

Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria Interina del Tribunal de Apelaciones.

Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 127

**1.** Basamos nuestra exposición de los hechos, en parte, en la sentencia emitida en dicha ocasión.

**2.** Por tratarse de un dictamen que pone fin a la controversia entre las partes, hemos decidido acoger el recurso como una apelación. *Figueroa v. Del Rosario*, 147 D.P.R. 121, 126-127 (1998); *Banco Santander v. Fajardo Farms*, 141 D.P.R. 237, 245 (1996); compárese, *Progressive Finance v. LSM General Const.,* 144 D.P.R. 796 (1998). Después de todo, no es el título brindado por el Tribunal a su dictamen, y sí su contenido, el que determina la naturaleza de un procedimiento. *Figueroa v. Del Rosario*, 147 D.P.R. a la pág. 127.

Dado el trasfondo procesal de la controversia, también hemos optado por acortar los términos para comparecer, según nos autoriza la Regla 7(B)(5) del Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXII-B, R. 7(B)(5) (Supl. 2005).

**3.** La norma es que un acuerdo de transacción *"no comprende sino los objetos expresados determinadamente en ella, o que, por una inducción necesaria de sus palabras, deban reputarse comprendidos en la misma."* 31 L.P.R.A. sec. 4826.

Una transacción generalmente no implica una renuncia general de derechos, sino que sólo se entienden renunciados los que están relacionados con la controversia. *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 D.P.R. 203, 214-216; (1994); *Citibank v. Dependable Ins. Co., Inc.,* 121 D.P.R. 503, 514 (1988); *Negrón Rivera y Bonilla, Ex parte,* 120 D.P.R. 61, 74-75 (1987); *Sucn. Román v. Shelga Corp.,* 111 D.P.R. 782, 787-789 (1981); *Chico v. Editorial Ponce, Inc.,* 101 D.P.R. 759, 778 (1973); *Cabrera v. Doval,* 76 D.P.R. 777, 780-781 (1954).

En el caso KLCE-2001-00781, observamos que la transacción otorgada por las partes se refería tan sólo a la deuda por contribuciones sobre ingresos, por lo que el Secretario de Hacienda no estaba impedido de cobrar deudas contributivas de otro tipo. Véase, *Citibank v. Dependable Ins. Co., Inc.,* 121 D.P.R. a la pág. 514; *Sucn. Román v. Shelga Corp.,* 111 D.P.R. a la pág. 788.

**4.** El Tribunal Supremo de Puerto Rico ha aclarado, en este sentido, que una reclamación extrajudicial no viene obligada a cumplir con ninguna forma especial. *Acosta Quiñones v. Matos Rodríguez,* 135 D.P.R. a la pág. 675; *Zambrana Maldonado v. E.L.A.,* 129 D.P.R. 740, 752 (1992).

Lo importante es que exista una manifestación inequívoca de la voluntad de ejercer la reclamación. *Galib Frangie v. El Vocero de P.R.,* 138 D.P.R. 560, 567 (1995).